IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RONALD ADAMS,

      Plaintiff,

vs.

SCOTT KERNAN, et al.,

      Defendants.

No. CIV S-07-0707 GEB EFB P

<u>ORDER AND FINDINGS
AND RECOMMENDATIONS</u>

Plaintiff is a state prisoner proceeding without counsel in an action brought under 42 U.S.C. § 1983. These findings and recommendations address two motions currently pending before this court: (1) defendants' motion to dismiss plaintiff's April 13, 2007 complaint for failure to exhaust his administrative remedies prior to filing suit (filed November 27, 2007 – docket no. 21) and (2) plaintiff's motion for a temporary restraining order (filed July 18, 2008 – docket no. 31). Also addressed herein is defendants' motion to strike plaintiff's surreply in connection with defendants' motion to dismiss (filed March 3, 2008 – docket no. 29).

////

////

////

1

## I. Facts[1]

Plaintiff, a non-insulin dependant diabetic, alleges that between March of 2006 and the filing of his Complaint, he was not provided with meal replacement cheese crackers, which were owed to him as part of a special diet. (Compl. 17-19.)

Plaintiff was transferred to California State Prison, Sacramento (SAC) in March of 2006 from Wasco State Prison. (Compl. 6.) Sometime in April 2006, Plaintiff was seen by Defendant Borges, a doctor at SAC. *Id.* During this visit, Plaintiff told Defendant Borges that as a Type II or non-insulin dependant diabetic, he was entitled to a special diet. (Compl. 7.) Defendant Borges told Plaintiff that SAC did not provide special diets for inmates, but that the prison could provide him with "cheese crackers" as a meal supplement. (Compl. 8.) On April 20, 2006, Defendant Borges provided Plaintiff with a CDC 128C chrono valid for one year from April 17, 2006, for "cheese crackers." (Compl. 8, 27.)

On April 11, 2006, Sue Summersett, a registered dietician of the California Department of Corrections and Rehabilitation (CDCR), wrote all "correctional food managers" to inform them of a change in policy that, now, only insulin dependant diabetic inmates could receive peanut butter crackers. (Compl. 10.)

On June 24, 2006, "B. Ruller" of the SAC Facility C main kitchen wrote a memo that: 1) restricted the distribution of cheese crackers to insulin dependant inmates; 2) substituted Ensure for cheese crackers for non-insulin dependant inmates who had previously received cheese crackers; and 3) placed the medical department in charge of administering the cheese crackers. (Compl. 11, 32.) As Plaintiff was a non-insulin dependant diabetic, he was not provided with any cheese crackers per this memo. (Compl. 11.)

On June 12, 2006, Plaintiff submitted an inmate grievance to the Chief Medical Officer, requesting that his prior medical chronos, including those for cheese crackers, be renewed. (Compl. 9.) On June 20, 2006, Plaintiff's grievance was screened out by Defendant O'Brien for failure to submit accompanying documentation. (Compl. 9, 23.) The SAC appeals office does not have any record of this grievance being successfully filed. ([Defs.'] Ex. A [in Supp. of Mot. to Dismiss ("Ex. A")], Decl. of R. Carter 2, 3.)

On July 14, 2006, Plaintiff submitted another inmate grievance addressed to the warden and chief medical officer of SAC through the inmate mail system. (Compl. 11, 24.) The SAC inmate appeals office received this grievance on September 15, 2006, and screened it out for being untimely. (Compl. 11, 23.) The SAC appeals office does not have any record of this grievance being filed. (Ex. A, Decl. of R. Carter 2, 3.)

---

[1] These facts are taken from defendants' motion to dismiss but are based on the facts set forth in plaintiff's complaint. For purposes of their motion to dismiss, defendants stipulated to the facts presented in plaintiff's complaint. Defs.' P. & A. in Supp. of Mot. to Dism. ("Defs.' P. & A.") at 2, n.1.

2

> Plaintiff attaches as an exhibit to his complaint, but does not include in his "statement of claims," a copy of a grievance submitted on August 1, 2006, that requested cheese crackers and the replacement of red meat in his food with tuna. (Compl. 33.) The SAC appeals office does not have any record of this grievance being filed. (Ex. A, Decl. of R. Carter. 2, 3.)
>
> On December [16], 2006, Plaintiff submitted another inmate grievance regarding the cheese crackers. (Compl. 14, 40.) On December 26, 2006, Defendant O'Brien screened out Plaintiff's appeal for being untimely, noting that his appeal lacked specificity as to the actual injury that had occurred within the last fifteen days. (Compl. 14, 35.) The SAC appeals office does not have any record of this grievance being filed. (Ex. A, Decl. of R. Carter 2, 3.)
>
> On January 11, 2007, Plaintiff mailed his December 2006 appeal to the director of inmate appeals. The office of inmate appeals does not have any record of this appeal being filed. ([Defs.'] Ex. B [in Supp. of Mot. to Dismiss], Decl. of T. Emigh 2.)
>
> On either February 25, 2007, or March 1, 2007, Plaintiff wrote the Office of the Ombudsman regarding the cheese crackers. (Compl. 15.) On March 29, 2007, the Ombudsman responded to Plaintiff, noting that he had not yet completed the administrative grievance process and noted that his medical needs were being met. (Compl. 16, 39.) The Ombudsman also responded that although Plaintiff was not on a special diet, cheese crackers were available to him. *Id.*

Defs.' P. & A. at 2-4.

Plaintiff's complaint alleges that defendant Borges was deliberately indifferent to plaintiff's medical needs by failing to prescribe a special diet for plaintiff, that defendant O'Brien violated plaintiff's due process rights by failing to process his inmate appeals complaining of inadequate medical care, and that defendant Grannis violated plaintiff's due process rights by failing to take any action after plaintiff told him that defendant O'Brien would not process his inmate appeals.[2] Compl. at 18 (claims 3 and 4).

---

[2] Attached to plaintiff's complaint are: (1) a copy of the September 15, 2006 appeal screening form indicating that plaintiff's July 14, 2006 grievance was untimely; (2) a copy of plaintiff's July 14, 2006 grievance; (3) a copy of the chrono signed by defendant Borges, authorizing plaintiff to receive two packages of cheese crackers from April 17, 2006 until April 16, 2007; (4) various doctors' reports indicating that plaintiff has an allergy to peanuts and that plaintiff should receive two meals at lunch; (5) a copy of the June 24, 2006 memorandum indicating that only those inmates who are "insulin-dependent" would be receiving crackers; (6) a copy of plaintiff's August 1, 2006 grievance; (7) a copy of the December 26, 2006 appeal screening form indicating that plaintiff's December 12, 2006 grievance was untimely and that plaintiff needed "to be specific to the actual problem that has occurred within the last 15 working days"; (8) a copy of plaintiff's January 11, 2007 letter to the director of inmate appeals; (9) an

## II. Defendants' Motion to Dismiss for Failure to Exhaust

Defendants move pursuant to Rule 12(b) of the Federal Rules of Civil Procedure to dismiss plaintiff's complaint for failure to exhaust. Defendants argue that plaintiff's complaint should be dismissed because plaintiff did not successfully file an inmate grievance at any level of review on his deliberate indifference claim or his due process claim prior to filing this action. Defs.' P. & A. at 4. In support of their motion to dismiss, defendants submit (1) the declaration of R. Carter, an Appeals Coordinator at SAC, indicating that grievances that are "screened out" are returned to the inmate and are not maintained by the Appeals Coordinator, and stating that there are no records of any grievances filed by plaintiff with regard to the claims in his complaint, and (2) the declaration of T. Emigh, the Assistant Chief of Inmate Appeals Branch in Sacramento, California ("IAB"), which receives all inmate appeals submitted to the third or highest level of review, indicating that no appeals submitted by plaintiff were accepted for review with the IAB concerning the claims in his complaint. Defs.' Exhs. A & B in Supp. of Mot. to Dism.

In his opposition to the motion, plaintiff "concede[s] that he did not exhaust his administrative remedies," but argues that his failure to exhaust should be excused because defendants obstructed his ability to exhaust by issuing "numerous bogus denials" of his appeals.[3] Pl.'s Decl. in Opp'n to Defs.' Mot. to Dism. ("Pl.'s Decl.") at 2; Pl.'s P. & A. in Supp. of Opp'n

---

undated, unaddressed letter from plaintiff complaining that defendant O'Brien was obstructing his right to appeal the denial of proper medical care and treatment; (10) a copy of the March 29, 2007 letter from the Ombudsman to plaintiff informing plaintiff that he needed "to proceed as directed in the letter dated February 21, 2007 from the Inmate Appeal Branch" and returning plaintiff's documents to him; and (11) a copy of plaintiff's December 16, 2006 grievance, containing a stamp indicating the appeal was received by the IAB on January 18, 2007.

[3] Plaintiff also argues, in a conclusory manner, that defendants obstructed his ability to exhaust his administrative remedies by failing to return his appeals to him. Pl.'s P. & A. at 13. However, plaintiff has not specified which, if any, of his pre-lawsuit grievances/appeals were not returned to him.

4

("Pl.'s P. & A.") at 2, 13, 14.[4] In support of his opposition to defendants' motion to dismiss, plaintiff submits some of the same documents submitted with his complaint, as well as (1) a February 21, 2007 letter from the IAB to plaintiff informing plaintiff of the proper appeal process (Exh. D); (2) a copy of a response to a grievance submitted by plaintiff after the commencement of this action (Exh. F); (3) a copy of plaintiff's appeal history, listing grievances received in 2003 and a grievance submitted on July 9, 2007, after the commencement of this action (Exh. G); (4) a copy of a grievance submitted by plaintiff after the commencement of this action (Exh. H); (5) a list of the status of various appeals by plaintiff, prepared and signed by the appeals coordinator (relating to an appeal plaintiff submitted after the commencement of this action) (Exh. I); and (6) a copy of a director's level decision issued to plaintiff in an unrelated matter (Exh. J).[5]

### A. Legal Standard

Pursuant to the Prison Litigation Reform Act of 1995 ("PLRA"), "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This requirement is mandatory and unequivocal. *Booth v. Churner*, 532 U.S. 731, 741 (2001); *McKinney v. Carey*, 311 F.3d 1198, 1200 (9th Cir. 2002) ("Congress could have written a statute making exhaustion a

---

[4] Plaintiff also argues that R. Carter's statement in his declaration that grievances which are "screened out" are returned to the inmate and are not maintained by the Appeals Coordinator is inaccurate (and was perjured) because "there is a database that show[s] screened out appeals that was not provide[d] to this court." Pl.'s P. & A. at 15-17, Exh. G. Defendants respond that "[p]laintiff's claim is without merit, as declarant Carter reviewed and provided all relevant information taken from [the alleged] database in her declaration." Defs.' Reply at 6. Because the court does not rely on R. Carter's declaration in deciding this motion, plaintiff's argument need not be addressed.

[5] In addition to plaintiff's opposition to defendants' motion to dismiss, plaintiff filed a surreply to defendants' reply. Defendants move to strike that surreply. Because plaintiff does not have a right to file a surreply, and was not granted leave of court to file one, defendants' motion to strike (docket no. 29) is granted. E.D. Cal. L.R. 78-230(m). Accordingly, plaintiff's surreply is not considered herein.

5

precondition to judgment, but it did not. The actual statute makes exhaustion a precondition to *suit*." (citation omitted)). A prisoner seeking leave to proceed *in forma pauperis* in an action challenging the conditions of his confinement brings an action for purposes of 42 U.S.C. § 1997e when he submits his complaint to the court. *Vaden v. Summerhill*, 449 F.3d 1047, 1050 (9th Cir. 2006). Therefore, a prisoner must exhaust available administrative remedies before filing any papers in federal court and is not entitled to a stay of judicial proceedings in order to exhaust. *Id*. at 1051; *McKinney*, 311 F.3d 1198.

The United States Supreme Court stated in *Jones v. Bock*, 549 U.S. 199, 215-16 (2007), that failure to exhaust under the PLRA is an affirmative defense and that if the affirmative defense can be decided on the complaint alone, a motion under Rule 12(b)(6) is appropriate. The Court explained:

> A complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief. If the allegations, for example, show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim; that does not make the statute of limitations any less an affirmative defense, see Fed. Rule Civ. Proc. 8(c). Whether a particular ground for opposing a claim may be the basis for dismissal for failure to state a claim depends on whether the allegations in the complaint suffice to establish that ground, not on the nature of the ground in the abstract.

*Id*. at 215.

**B. Exhaustion Under California Law**

California prisoners may appeal "any departmental decision, action, condition, or policy which they can demonstrate as having an adverse effect upon their welfare." Cal. Code Regs. tit. 15, § 3084.1(a).

> To initiate the process, an inmate must fill out a simple form, Dept. of Corrections, Inmate/Parolee Appeal Form, CDC 602 (12/87) (hereinafter Form 602), that is made "readily available to all inmates." Cal. Code Regs., tit. 15, § 3084.1(c) (2004). The inmate must fill out two parts of the form: part A, which is labeled "Describe Problem," and part B, which is labeled "Action Requested." Then, as explained on Form 602 itself, the prisoner "must first informally seek relief through discussion with the appropriate staff member." [] The staff member fills in part C of Form 602 under the heading "Staff Response" and then returns the form to the inmate.

> If the prisoner is dissatisfied with the result of the informal review, or if informal review is waived by the State, the inmate may pursue a three-step review process. *See* §§ 3084.5(b)-(d). Although California labels this "formal" review (apparently to distinguish this process from the prior step), the three-step process is relatively simple. At the first level, the prisoner must fill in part D of Form 602, which states: "If you are dissatisfied, explain below." [] The inmate then must submit the form, together with a few other documents, to the Appeals Coordinator within 15 working days-three weeks-of the action taken. § 3084.6(c). This level may be bypassed by the Appeals Coordinator in certain circumstances. § 3084.5(b). Within 15 working days after an inmate submits an appeal, the reviewer must inform the inmate of the outcome by completing part E of Form 602 and returning the form to the inmate.
>
> If the prisoner receives an adverse determination at this first level, or if this level is bypassed, the inmate may proceed to the second level of review conducted by the warden. §§ 3084.5(c), (e)(1). The inmate does this by filling in part F of Form 602 and submitting the form within 15 working days of the prior decision. Within 10 working days thereafter, the reviewer provides a decision on a letter that is attached to the form. If the prisoner's claim is again denied or the prisoner otherwise is dissatisfied with the result, the prisoner must explain the basis for his or her dissatisfaction on part H of the form and mail the form to the Director of the California Department of Corrections and Rehabilitation within 15 working days. § 3084.5(e)(2). An inmate's appeal may be rejected where "[t]ime limits for submitting the appeal are exceeded and the appellant had the opportunity to file within the prescribed time constraints." § 3084.3(c)(6).

*Woodford v. Ngo*, 548 U.S. 81, 85-86 (2006). Generally, completion of the third level, the Director's Level of Review, exhausts the remedy. Cal. Code Regs. tit. 15, § 3084.1(a). All steps must be completed before a civil rights action is filed, unless a plaintiff demonstrates a step is unavailable to him; exhaustion during the pendency of the litigation will not save an action from dismissal. *McKinney*, 311 F.3d at 1200. The claim must be properly exhausted; therefore, an untimely or otherwise procedurally defective administrative grievance or appeal does not satisfy the exhaustion requirement. *Woodford*, 548 U.S. at 83-84.

**C.    Analysis**

Defendants contend that plaintiff did not successfully file an inmate grievance at any level of review, and therefore, his claims must be dismissed as unexhausted. Plaintiff concedes that he did not complete the grievance process, but insists this is because defendant O'Brien obstructed his ability to do so. For the reasons stated below, this court finds that plaintiff failed to properly exhaust his administrative remedies as to both his due process and his deliberate

indifference claims, and was not excepted from doing so. Accordingly, the court recommends that defendants' motion to dismiss plaintiff's complaint be granted without prejudice.

Plaintiff has conceded that he did not properly exhaust his claims before filing this action. Compl. at 2; *see also* Pl.'s Decl. at 2; Pl.'s P. & A. at 13. Such a "concession to nonexhaustion is a valid ground for dismissal, so long as no exception to exhaustion applies." *Wyatt*, 315 F.3d at 1120; *see also Cohea v. Jones*, 2008 WL 114956, at *5 (E.D. Cal. Jan. 11, 2008). Therefore, the only issue is whether plaintiff is entitled to an exception to the exhaustion requirement.

Plaintiff contends he should be entitled to an exception to the exhaustion requirement because defendants obstructed his ability to exhaust by issuing "numerous bogus denials" of his appeals. As an initial point, it is unclear whether *any* exceptions can be made to the exhaustion requirement. *Ngo v. Woodford*, 539 F.3d 1108, 1110 (9th Cir. 2008) ("It is unclear whether we can read exceptions into the PLRA's exhaustion requirement."). In *Booth v. Churner,* the Supreme Court "cautioned against reading futility or other exceptions into the statutory exhaustion requirement." *Armentero v. Snead*, 2007 WL 2019586, at *5 (E.D. Cal. July 9, 2007) (citing *Booth*, 532 U.S. at 741 n.6). In *Woodford v. Ngo*, the Supreme Court declined to address, but did not foreclose the possibility, that an exception to the exhaustion requirement may exist. 548 U.S. at 101-03; *but see Woodford*, 548 U.S. at 103-04 (Breyer, J. concurring) (reasoning that the exhaustion requirement is not absolute and certain facts may justify exceptions).

If exceptions are in fact permitted, the Ninth Circuit has suggested they may be permitted in situations where "administrative procedures were unavailable," where "prison officials obstructed [a prisoner's] attempt to exhaust," or where a prisoner "was prevented from exhausting because procedures for processing grievances weren't followed." *Ngo*, 539 F.3d at 1110. In a recent case from this district, however, a plaintiff argued "that administrative remedies were not available to him due to the actions of prison staff, that he attempted to submit grievances to all the right persons, and that he therefore qualifie[d] for an 'exception' to the

8

exhaustion requirement." *Wilson v. Wann*, 2008 WL 4166886, at *2 (E.D. Cal. Sept. 8, 2008). The court rejected the plaintiff's arguments, stating:

> The evidence to which plaintiff points in his opposition brief does not support an exception to the exhaustion requirement for the proposition that administrative remedies were not available to him. . . . The record shows plaintiff complained to various people in various ways (often not using official grievance forms), and that he initiated the grievance process with respect to at least some of his claims. . . . Along with many apparently irrelevant exhibits, plaintiff provides a copy of the grievance that coincides most closely with his litigation claims, as an exhibit to his amended complaint. . . . It appears this grievance was returned to plaintiff initially because, among other things, it contained too many claims involving different subjects, and a second time because he had not attached a required property receipt. . . . Nothing suggests plaintiff could not cure the deficiencies in his submissions, and then resubmit his grievance again at the appropriate level. Plaintiff's apparent position – that his resorting to letters to the Office of the Inspector General, CDCR's Office of Internal Affairs and the Warden was justified, without further attempting to exhaust – is unsupported. . . . In particular, nothing indicates plaintiff was foreclosed or relieved from proceeding through all steps in the grievance process. By pointing to the gaps in plaintiff's efforts to properly exhaust, defendant has met his burden.

*Id.*; *see also McCloud v. Woodford*, 2008 WL 4602548, at *5 (C.D. Cal. Oct. 14, 2008) (Record contained no evidence of any efforts by plaintiff to remedy the identified deficiencies and properly to resubmit his appeals and therefore his efforts to exhaust administrative remedies were not obstructed.); *Frantz v. Schriro*, 2006 WL 2772830, at *4 (D. Ariz. Sept. 26, 2006) (Argument "in essence, that the grievance system . . . was infected with a culture hindering an inmate's ability to pursue grievances" failed to "explain away the complete absence of any effort by Plaintiff to grieve his complaint.").

Because plaintiff submitted various grievances/appeals prior to filing this action, each of those appeals will be addressed herein to determine whether they entitle plaintiff to an exception to the exhaustion requirement.

### 1. June 12, 2006 Appeal

On June 12, 2006, plaintiff submitted an inmate grievance (Form 602) to the chief medical officer of SAC, requesting that his prior medical chronos, including those for cheese crackers, be renewed. Compl. at 9. On June 20, 2006, plaintiff's grievance was screened out by

9

defendant O'Brien for failing to attach a copy of his medical request form (CDC 7362) to his grievance. Compl. at 9, 23. Although plaintiff alleges that he "submitted" the necessary form, Compl. at 9, Pl.'s P. & A. at 7, plaintiff does not allege that he properly attached the form to his grievance, as required by Form 602.[6] Moreover, even if plaintiff properly attached the medical form to his June 12 grievance, plaintiff was notified on June 20 that his grievance was screened out for failure to submit the necessary documentation along with his grievance (Compl. at 9); accordingly, plaintiff could have re-submitted the grievance along with the requested documentation. Therefore, plaintiff's June 12, 2006 grievance did not excuse plaintiff from (or satisfy) the exhaustion requirement. *See* Cal. Code Regs. tit. 15, § 3084.5(c)(5) (stating that an appeal may be rejected because it "is incomplete or necessary supporting documents are not attached"); *see also Chatman v. Johnson*, 2007 WL 2023544, at *6 (E.D. Cal. July 11, 2007).

### 2. July 14, 2006 Appeal

On July 14, 2006, plaintiff submitted an inmate grievance (Form 602) through the inmate mail system, which was addressed to the warden and chief medical officer of SAC and which complained that he was being denied access to proper medical care. Compl. at 11. On September 21, 2006, defendant O'Brien screened out plaintiff's grievance as untimely, stating that plaintiff's appeal was signed on July 14, 2006 but was not received until September 15, 2006. *Id.* at 11-12, 23. Although plaintiff argues that his appeal either sat on the "warden['s] desk for two months or the warden gave this appeal to the appeal coordinator I. O'Brian [sic] and his office held this appeal in order to obstruct [plaintiff's] appeal process," *id.* at 12, defendants contend that plaintiff addressed his July 14 request "to high level prison staff, such as the Warden and CMO, who do not normally review first level appeals, and who were not responsible

---

[6] It is not clear to whom plaintiff alleges he submitted the form. In his complaint, plaintiff states that he "did submit [the 7362 form] and [he] was never seen" and in his opposition to defendants' motion, plaintiff states that he "had just [seen] the doctor in April 2006 so the plaintiff did what was requested and file[d] a 7362 form *to medica[l]* but was never call[ed] to be[] seen." Compl. at 9, Pl.'s P. & A. at 7 (emphasis added).

10

for providing Plaintiff with the cheese crackers, [and therefore] Plaintiff's appeal would have to have been re-routed to the institution staff member who could properly address his request." Defs.' Reply at 5. Because plaintiff's appeal was sent to the warden and chief medical officer of SAC, Compl. at 11, and was not received by the proper staff member until September 15, 2006, Compl. at 23[7], it was properly rejected as untimely. *See* Cal. Code Regs. tit. 15, § 3084.6(c) (stating that for an inmate grievance to be timely, it must be submitted within fifteen working days of the event or decision being appealed); *Cato v. Avila*, 2008 WL 3540699, at *4 (E.D. Cal. Aug. 13, 2008) ("Pursuant to the California Department of Corrections administrative grievance system for prisoner complaints, the appropriate place of filing a formal level appeal is with the Appeals Co-ordinator and not the Warden. (Cal. Code Regs., tit. 15 § 3084.2(c) (2007)). Accordingly, even assuming that plaintiff forwarded a copy of his grievance to the warden, this is of no assistance to plaintiff since he was not entitled to a second-level review response from the Warden.").

Moreover, if plaintiff believed his July 14, 2006 appeal was improperly screened out and was therefore returned to him in error, plaintiff could have re-submitted the appeal with an explanation as to why it should be accepted for review. *See* Compl. at 23 (The inmate/parolee appeal screening form states: "This screening action may not be appealed unless you allege that the above reason is inaccurate. In such case, please return this form to the Appeals Coordinator with the necessary information."). However, plaintiff chose not to do so. Therefore, even if plaintiff could establish that he timely submitted the July 14 grievance and that it should not have been rejected, because administrative procedures were readily available to plaintiff and plaintiff was still able to exhaust, this court does not find that plaintiff was entitled to an
////

---

[7] Because plaintiff attached this document to his complaint and its authenticity is not in question, it may be considered on a motion to dismiss. *Townsend v. Columbia Operations*, 667 F.2d 844, 848-49 (9th Cir. 1982).

11

exception to the exhaustion requirement on this ground.[8]

### 3. August 1, 2006 Appeal

On August 1, 2006, plaintiff filed another Form 602 appeal complaining that he was being denied access to proper medical care and requesting that he receive cheese crackers and tuna for lunch. Compl. at 33[9]; Pl.'s P. & A. at 11. The appeal contains a time stamp indicating it was received on August 2, 2006. Compl. at 33. Plaintiff alleges that "[t]he appeal just kept coming back to the plaintiff with no answer no screen out nothing." Pl.'s P. & A. at 11.

Defendants contend that the SAC appeals office does not have a record of this grievance being filed but acknowledge that SAC's Inmate/Parolee Appeals Tracking System does not track the review history for grievances that have been screened out. Defs.' Mot. at 3; Defs.' Reply at 6. Although defendants have the burden of showing that plaintiff failed to exhaust his administrative remedies, as discussed above, plaintiff has conceded that he never properly exhausted either of the claims in his complaint. Therefore, as noted above, the only issue is whether plaintiff was excused from doing so.

As an initial point, this court notes that plaintiff does not indicate to whom he sent the appeal (or who received it), and that although plaintiff says his August 1, 2006 appeal "kept coming back" to him, he does not allege when it was returned to him and/or how it could "come back to him" more than one time. This court also notes that plaintiff mentions all of his

---

[8] If plaintiff's grievance was *properly* rejected as untimely, it also would not excuse plaintiff from the exhaustion requirement. In *Ngo v. Woodford*, 403 F.3d 620, 625 (9th Cir. 2005), the Ninth Circuit held that a prisoner satisfied the exhaustion requirement by showing his grievance had been rejected as untimely because "he could go no further in the prison's administrative system; no remedies remained available to him." However, in *Woodford v. Ngo*, 548 U.S. 81, 87, 93 (2006), the Supreme Court reversed the Circuit, finding that the PLRA requires proper exhaustion. In other words, a prisoner cannot satisfy the PLRA's exhaustion requirement "by filing an untimely or otherwise procedurally defective administrative grievance or appeal." *Woodford*, 548 U.S. at 83-84; *see also Runge v. Ippollito,* 2008 WL 618914, at *5 (N.D. Cal. Mar. 4, 2008) ("Because plaintiff's grievances were filed long after expiration of the fifteen-day period to file, they were procedurally defective and thus not sufficient to exhaust.").

[9] Because plaintiff attached this document to his complaint and its authenticity is not in question, it may be considered on a motion to dismiss. *Townsend*, 667 F.2d at 848-49.

12

attempted appeals/grievances in his complaint *except* his alleged August 1, 2006 grievance, and that in plaintiff's December 16, 2006 appeal, plaintiff states that he filed grievances in June and July 2006, but does not mention ever filing a grievance in August 2006.[10] Compl. at 41-42.

Nonetheless, even if this court credits plaintiff's claim that he submitted the August 1 appeal to the proper prison staff member and that the appeal was returned to him unanswered, plaintiff could have re-submitted the appeal, could have inquired about the status of his appeal, or could have requested that the Appeals Coordinator waive plaintiff's informal level appeal requirement. However, plaintiff chose not to do so and instead waited until December 16, 2006 to file another Form 602 appeal, even though he has admitted that he is well aware of the exhaustion process. *See generally* Compl.; Pl.'s P. & A. at 20.

Again, because administrative procedures were readily available to plaintiff, plaintiff is not entitled to an exception to the exhaustion requirement on this ground.[11] *See Davis v. Evans*, 2008 WL 818534, at *4 (N.D. Cal. Mar. 25, 2008) (Even if plaintiff's informal complaint was lost or ignored, plaintiff failed to exhaust the three remaining levels of review); *Roberts v.*

---

[10] Although plaintiff's surreply has been stricken and is not considered herein, it is noteworthy that attached to the surreply is an inmate/parolee appeal screening form dated August 2, 2006 rejecting an unknown appeal by plaintiff because the appeal failed to attach plaintiff's April 2006 chrono. It is possible that the August 2 screening form was rejecting plaintiff's August 1 grievance.

[11] The court is mindful that the failure to respond to properly filed grievances may result in a finding that exhaustion occurred. *Reynolds v. Cal. Dep't of Corr.*, 2007 WL 1080529, at *2 (E.D. Cal. Apr. 5, 2007) (finding that because defendants failed "to address plaintiff's contention that he attempted to utilize the process properly but was unsuccessful" because several of his appeals were ignored, defendants failed to meet their burden of proving the absence of exhaustion); *see also Burrows v. Gifford*, 2007 WL 2827779, at *2-3 (E.D. Cal. Sept. 27, 2007) (finding that because the defendants failed to respond to the plaintiff's argument that the prison officials never returned plaintiff's Form 602 to him and that therefore the prison did not make the administrative appeal process "available to" him, defendants did not meet their burden of proving the absence of exhaustion). However, as discussed above, plaintiff has conceded that he failed to exhaust his claims. Therefore, the issue is not whether defendants have met their burden of proving that plaintiff failed to exhaust but whether plaintiff should be excused from the exhaustion requirement. Unlike the cases cited above, even assuming plaintiff's August 1, 2006 appeal was unanswered, all of plaintiff's other appeals were answered, and there is no reason to believe that if plaintiff re-submitted his August 1, 2006 appeal, it would not have been answered.

1 *McGrath,* 2008 WL 818538, at *4 (N.D. Cal. Mar. 25, 2008) (The fact that inmate appeals system was in disarray and some appeals were getting lost did "not excuse exhaustion"); *Williams v. Lewis*, 2008 WL 860113, at *3 (N.D. Cal. Mar. 28, 2008) (Grievance that was allegedly ignored at the informal level was not sufficient to exhaust because regulation provided for exceptions permitting waiver of the informal level where the prisoner is unable to get an answer at the level and prisoner never sought such a waiver.); *see also Hendon v. Baroy*, 2007 WL 3034263, at *3 (E.D. Cal. Oct. 16, 2007) ("[V]ague assertion that grievances were filed is insufficient to make the requisite showing that exhaustion either occurred or was excused due to some form [of] conduct on the part of prison officials which prevented plaintiff from properly utilizing the appeals process.").

### 4. December 16, 2006 Appeal

On December 16, 2006, plaintiff submitted a Form 602 appeal complaining that he was not prescribed a "medical diet" and requesting that he receive his prescribed cheese crackers and tuna in place of red meat, that his medication (Glipizide) be reordered, that his blood sugar and blood pressure be checked three times a week, and that he receive his back medication twice a day. Compl. at 14, 40-42.[12] On December 26, 2006, defendant O'Brien screened out plaintiff's grievance as untimely, indicating that plaintiff needed "to be specific to the actual problem that occurred within the last 15 working days" and that if his "issue is crackers [he shouldn't] include [his] medical issues." *Id.* at 35, 36.[13]

An appeal can be screened out because it is incomplete or lacks specificity, *see* Cal. Code Regs. tit. 15, § 3084.5(c)(5), or because it is untimely, *see id.* § 3084.6(c). Because plaintiff's December 16 appeal was unclear as to precisely what problem plaintiff was complaining about

---

[12] Because plaintiff attached this document to his complaint and its authenticity is not in question, it may be considered on a motion to dismiss. *Townsend*, 667 F.2d at 848-49.

[13] Because plaintiff attached this document to his complaint and its authenticity is not in question, it may be considered on a motion to dismiss. *Townsend*, 667 F.2d at 848-49.

14

and whether that problem occurred within the last 15 working days, the appeal was properly screened out. *See Armentero*, 2007 WL 2019586, at *7 ("The Appeals Coordinator screened plaintiff's appeal and rejected it as incomplete. . . . In plaintiff's case, the Appeals Coordinator checked the section stating: 'You have not adequately completed the Inmate/Parolee Form (CDC 602)' . . . The Appeals Coordinator asked plaintiff '[w]hat are you requesting?' and told plaintiff to '[b]e very specific about why the 1st level response dissatisfies you.' . . . Rather than completing Section F and clarifying his request for relief, plaintiff appealed to the director's level of review. The director's level of review similarly screened and rejected his appeal . . . . Plaintiff never returned to the second level of review or contacted the Appeals Coordinator. . . . Instead, plaintiff filed this lawsuit. By filing a lawsuit before completing the grievance process, plaintiff failed to exhaust his available administrative remedies-a prerequisite to filing this action.").

Plaintiff could have clarified and re-submitted his appeal or otherwise attempted to exhaust his claim. *See Wilson v. Wann*, 2008 WL 4166886, at *2 (E.D. Cal. Sept. 8, 2008) ("It appears this grievance was returned to plaintiff initially because, among other things, it contained too many claims involving different subjects, and a second time because he had not attached a required property receipt. . . . Nothing suggests plaintiff could not cure the deficiencies in his submissions, and then resubmit his grievance again at the appropriate level."). Similarly, here, because plaintiff chose not to do so, his December 16, 2006 grievance did not excuse him from the exhaustion requirement.

### 5. **January 11, 2007 Appeal**

On January 11, 2007, plaintiff mailed an appeal to the director of inmate appeals, complaining that defendant O'Brien was obstructing his ability to file a grievance regarding his medical issues and that he was being denied his prescribed medical care. Compl. at 15, 37.[14]

---

[14] Because plaintiff attached this document to his complaint and its authenticity is not in question, it may be considered on a motion to dismiss. *Townsend*, 667 F.2d at 848-49.

15

Plaintiff complained that every time he filed an appeal to the medical department, the appeals were screened out as untimely "citing that it has exceed[ed] 15 working days." *Id.* at 37. Plaintiff argued that "there is no time limit to medical treatments." *Id.*

On February 21, 2007, plaintiff received a letter from the IAB advising plaintiff to follow the administrative grievance process. *Id.* at 15. Specifically, the letter indicated that plaintiff's appeal form "must be completed through the Second Level of Review on behalf of the Warden or Parole Region Administrator" and that plaintiff's "appeal was rejected, withdrawn or cancelled." *Id.*; Pl.'s Exh. D in Supp. of Opp'n.[15] The letter advised plaintiff that if he disagreed with that decision, he was to contact the Appeals Coordinator and comply with the instructions from that office. Pl.'s Exh. D in Supp. of Opp'n.

Because plaintiff did not follow the correct procedures for filing his appeal, his appeal to the director of inmate appeals was properly rejected. "[P]roper exhaustion of administrative remedies is necessary," and "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules . . . ." *Woodford*, 548 U.S. at 84, 90. After receiving the February 21 letter, plaintiff could have followed the instructions for exhaustion set forth therein, but chose not to do so. Accordingly, plaintiff is not entitled to an exception to the exhaustion requirement on this ground. *See Candelario v. Rodriguez*, 2008 WL 3876064, at *3 (N.D. Cal. Aug. 19, 2008) (Claim that prison officials were unfairly screening inmate appeals does not excuse failure to submit the matter to the second level of appeal.).

### 6. February 25, 2007 Letter

On either February 25, 2007 or March 1, 2007, plaintiff mailed his "unanswer[ed] appeal and the letter from [the IAB]" to the Office of the Ombudsman. Compl. at 15. On March 29, 2007, the Ombudsman wrote a letter to plaintiff, noting that plaintiff had not yet completed the administrative grievance process and stating that the Office of the Ombudsman "does not

---

[15] Because plaintiff referred to this document in his complaint and its authenticity is not in question, it may be considered on a motion to dismiss. *Townsend*, 667 F.2d at 848-49.

intercede in matters until [they have] been exhausted." *Id.* at 15, 39.[16] The Ombudsman advised plaintiff to "proceed as directed in the letter dated February 21, 2007 from the Inmate Appeal Branch." *Id.* at 39. The Ombudsman also stated that plaintiff's medical needs were being met and that although plaintiff was not on a special diet, cheese crackers were available to him. *Id.*

Again, because plaintiff did not follow the correct procedures for filing his appeal, plaintiff's letter to the Ombudsman was properly rejected; plaintiff is not entitled to an exception to the exhaustion requirement on this ground. *See Woodford*, 548 U.S. at 90; *Candelario*, 2008 WL 3876064, at *3.

Plaintiff concedes that he has not fully exhausted his administrative remedies. Moreover, no exception to the exhaustion requirement is appropriate in this case. Accordingly, defendants' motion must be granted and the case must be dismissed without prejudice.

### III. Plaintiff's Motion for a Temporary Restraining Order

On July 18, 2008, plaintiff filed a motion for a temporary restraining order and preliminary injunction, requesting that this court order defendants to provide plaintiff "a kosher nourishment meal along with two kosher[] lunch[] bags" and to refrain "from obstruction of plaintiff['s] future appeal[] rights." Pl.'s Mot. for T.R.O. at 2-3. Because this court is recommending that plaintiff's complaint be dismissed for failure to exhaust, the merits of plaintiff's motion for injunctive relief need not be reached.[17]

---

[16] Because plaintiff attached this document to his complaint and its authenticity is not in question, it may be considered on a motion to dismiss. *Townsend*, 667 F.2d at 848-49.

[17] Nonetheless, plaintiff's motion for a temporary restraining order and/or preliminary injunction would be denied. A preliminary injunction will not issue unless necessary because threatened injury would impair the court's ability to grant effective relief in a pending action. *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984); *Gon v. First State Ins. Co.*, 871 F.2d 863 (9th Cir. 1989). To prevail upon an application for a prohibitory preliminary injunction, plaintiff must demonstrate either probable success on the merits and the possibility of irreparable injury, or serious questions regarding the merits of his claims and a balance of hardships tipping sharply in his favor. *Miss Universe, Inc. v. Flesher*, 605 F.2d 1130, 1134 (9th Cir. 1979). "Under any formulation of the test, plaintiff must demonstrate that there exists a significant threat of irreparable injury." *Oakland Tribune, Inc. v. Chronicle Publ'g Co.*, 762 F.2d 1374, 1376 (9th Cir. 1985). Further, the threatened injury must be immediate. *Los*

17

**IV. Conclusion**

In accordance with the above, it is hereby ORDERED that defendants' motion to strike plaintiff's surreply (docket no. 29) is granted.

Further, it is RECOMMENDED that:

1. Defendants' motion to dismiss plaintiff's complaint (docket no. 21) be granted;

2. Plaintiff's motion for a temporary restraining order (docket no. 31) be denied; and

3. This case be dismissed without prejudice.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated: March 13, 2009.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

---

*Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1201 (9th Cir. 1980). Plaintiff declares that he has suffered and continues to suffer irreparable harm because he has been forced to eat only bread and water and is therefore unable to take his diabetic medication. Decl. in Supp. of Mot. for T.R.O. at 7. However, plaintiff has not shown a likelihood of success on the merits, a significant threat of irreparable harm, or that the threatened harm is immediate.